## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AMANDA BYARD,<br>Individually and on behalf<br>of other similarly situated persons, | )<br>)<br>) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHIEFTON ENTERPRISES, INC.,<br>D/B/A RELIABLE LOGISTIC SERVICES, | )<br>) |
| | ) |
| Serve: | ) |
| John Roberts | ) |
| 8001 Appleton Avenue | ) |
| Kansas City, MO 64138 | ) |
| | ) |
| and | ) |
| | ) |
| ELLIOTT AUTO SUPPLY CO., INC.,<br>D/B/A FACTORY MOTOR PARTS | )<br>) |
| | ) |
| Registered Agent: | ) |
| National Corporate Research, LTD. | ) |
| 222 E. Dunklin Ste 102 | ) |
| Jefferson City, MO 65101 | ) |
| | ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

Plaintiff Amanda Byard, individually and on behalf of all others similarly situated,

for her Complaint against Defendants alleges as follows:

1.     During the class period, Chiefton Enterprises, Inc., d/b/a Reliable Logistic Services and Elliott Auto Supply Co., Inc., d/b/a Factory Motor Parts operate numerous branches in the United States.  Elliott Auto Supply Co., Inc. ("Factory Motor Parts" or "FMP") and Chiefton Enterprises, Inc., d/b/a Reliable Logistic Services ("Chiefton," or "RLS") conspire to misclassify their delivery driver employees as independent contractors. Defendants employ delivery drivers who use automobiles not owned by either Defendant to deliver Automotive Parts to Factory Motor Parts' customers.  Instead of compensating delivery drivers by the hour or for the reasonably approximate costs of the business use of their vehicles, RLS compensates its drivers on a day rate, while simultaneously failing to provide any reimbursement for the number of miles driven by delivery drivers which in turn, causes their wages to fall below the wage rate required by federal and state minimum wage laws.

2.     Plaintiff Amanda Byard, and all other similarly situated employees, work or previously worked as delivery drivers at various RLS and/or FMP locations.  This lawsuit is brought as: (1) a collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, to recover unpaid minimum wages and overtime owed to Plaintiffs and all other similarly situated workers employed by RLS and/or FMP; and (2) a Rule 23 class action under various state minimum wage and overtime laws to recover unpaid wages on behalf of delivery drivers in each of those states.

**Jurisdiction and Venue**

3.    The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions.  Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.    The wage laws of the various states identified in Count II authorize court actions by private parties to recover for violation of the wage provisions of such states' laws.  This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).  This Court also has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2) because the case is brought as a class action between citizens of different states and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

5.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in this district and a substantial part of the events giving rise to the claims occurred in this district.

**Parties**

6.    Defendant RLS is a Texas corporation, whose corporate status was administratively dissolved in Missouri on March 24, 2004, and whose corporate status was similarly administratively dissolved in Utah and Colorado. RLS provides delivery services in the United States, including Missouri, Colorado, Utah and Texas, during the class period.

7.    Defendant FMP is a Minnesota Corporation that provides after-market motor parts. Defendant FMP operates over 104 locations in 19 states, including Missouri.

8. Plaintiff Amanda Byard was employed by both RLS and FMP from approximately October 2013 to March 2014 as a delivery driver in Kansas City, Missouri and Lee's Summit, Missouri.

9. Plaintiff Byard and other similarly situated persons have been employed by RLS within three years of the filing of this action.

## General Allegations

### *RLS's Business*

10. RLS provides delivery services across the United States. During the last approximately three years RLS has operated out of FMP locations in Missouri, Texas, Utah and Colorado.

The primary function of these RLS locations is to deliver automotive parts to FMP customers, including dealerships and mechanics. RLS employs delivery drivers who have the same primary job duty: to deliver FMP's motor parts to FMP customers, while using vehicles not owned by FMP or RLS.

### *FMP's Business*

11. FMP is a leader in the distribution of Original Equipment and Name Brand Automotive parts lines. During the last three years, FMP has operated over 104 locations in 19 states. FMP serves markets in the Midwest, Mountain States, Southwest and West Coast.

12. The primary function of these FMP locations is to provide after-market automotive parts to its customers, including dealerships and mechanics.

4

13.     FMP employs delivery drivers who have the same primary job duty: to deliver FMP's motor parts to FMP customers, while using vehicles not owned by FMP or RLS.

14.     FMP is a joint employer within the meaning of the FLSA because it regularly acts in the interest of RLS in relation to employees and/or RLS and FMP are not completely disassociated with respect to Plaintiff and all others similarly situated and may be deemed to share control of the Plaintiff and all others similarly situated.

### Defendants' Failure to Pay Overtime

15.     Defendants misclassify Plaintiff and class member delivery drivers as independent contractors. But Defendants have daily control over every aspect of the workday, including when and where class members are to report, when and where they must go during the day, and how the work is performed.

16.     Defendants employ delivery drivers, including Plaintiff and all others similarly situated. Said drivers routinely are scheduled and work in excess of 40 hours in a workweek.

17.     Plaintiff, and all others similarly situated do not receive overtime compensation when they work in excess of 40 hours in a workweek.

### Defendants' Failure to Reimburse Employees for Expenses Incurred in the Performance of Their Work

18.     Defendants require their delivery drivers to maintain, insure and pay for safe, legally-operable, and highly-insured automobiles when delivering FMP's automotive parts.

19.     Delivery drivers incur costs for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, and depreciation ("automobile expenses") while delivering automotive parts for the benefit of Defendants.

20.     Defendants' "Delivery Driver Reimbursement Policy" applies to Plaintiffs and all class member delivery drivers.

21.     Defendants do not reimburse employees for costs incurred while delivering automotive parts for the benefit of Defendants.

22.     Despite the relative ease of tracking actual miles driven by their drivers, Defendants do not do so.

23.     During the applicable limitations period, the IRS business mileage reimbursement rate ranged between $.445 and $.585 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the American Automobile Association, have determined average costs per mile of between $.45 and $.55 during the same period. These figures reasonably approximate the average cost of owning and operating a vehicle for use in delivering automotive parts.

24.     The driving conditions associated with the automotive parts business result in more frequent routine maintenance costs, higher costs due to repairs, and more rapid depreciation associated with driving a car as much and in the manner required of a delivery driver's car. Defendants' delivery drivers further experience lower gas mileage

and higher repair costs than the average driver used to determine the average cost of owning and operating a vehicle described above due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, driving short routes as opposed to highway driving, and driving under time pressures.

25.     For example, in one month alone, Plaintiff Byard drove over 4,000 miles for the benefit of Defendants, without reimbursement.

26.     The overall depreciation and wear-and-tear on vehicle parts that had not yet manifested in larger repairs on Plaintiff Byard's vehicle were sufficient to place her overall cost of owning and operating his vehicle for Defendants' benefit within the range found by the IRS and other reputable studies, which, as stated above, represent a reasonable approximation of the cost of operating an automobile to deliver automotive parts.

27.     Defendants' reimbursement policy does not reimburse their delivery drivers for even their out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, and thus Defendants uniformly fail to reimburse their delivery drivers at any reasonable approximation of the cost of owning and operating their vehicle for Defendants' benefit.

28.     Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants such that the wages they pay to

Plaintiffs and other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

29.     Defendants fail to reasonably approximate the amount of their drivers' automobile expenses to such an extent that their drivers' wages are diminished beneath both the federal and state minimum wage rate requirements.

30.     In sum, Defendants' failure to maintain any reimbursement policy and methodology fail to reflect the realities of delivery drivers' automobile expenses.

***Defendants' Failure to Reimburse Automobile Expenses Causes Minimum Wage Violations***

31.     Regardless of the precise amount of the per-delivery reimbursement, Defendants' complete failure to reimburse for vehicle related expenses resulted in systematic violations of the federal minimum wage, and also various state minimum wage requirements where Defendants employs delivery drivers.

32.     Plaintiff Amanda Byard was paid approximately $2,300.00 per month during her employment with Defendants. During that time period, the federal minimum wage rate was $7.25 per hour.

33.     Plaintiff Byard drove a 2004 Suzuki Forinza while delivering automotive parts for Defendants.

34.     Plaintiff Byard routinely drove approximately 4,000 miles per month for Defendants.

35.     Plaintiff Byard, who is not an expert in the field of calculating the cost of automobile usage, is unable to calculate the total expenses she incurred driving for Defendants due to unknown costs such as "wear-and-tear" and depreciation.  However, by way of example, she has documented automobile expenses during November, 2013. Even understating expenses at a rate of $.35 per mile (which is significantly under Federal Reimbursement Rates) as an estimate of Byard's actual expenses, every mile driven on the job decreased her net wages by at least $1,400.

36.     Thus, during this exemplary time period, depending on whether Defendants' reimbursement rate is compared to the IRS rate or Byard's under-stated expenses, Byard "kicked back" to Defendants approximately $1,400.  During the same period, Byard worked approximately 180 hours and earned $2,300.00. After accounting for said "kick backs," Plaintiff earned a regular rate of $1.66 - $5.00 per hour in direct violation of the FLSA and state minimum wage laws.

37.     All of Defendants' delivery drivers, including the Opt-In Plaintiffs, had similar experiences to those of Plaintiff Byard.  They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid hourly wages at or very near the applicable state or federal minimum wage.

38.     All of Defendants' other delivery drivers were paid at or very near the same rates per month.

39. All of Defendants' other delivery drivers were not reimbursed for automobile expenses.

40. Based on the experience of Plaintiff Byard and the Opt-In Plaintiffs, Defendants' delivery drivers typically drive excessive miles per month, and they make multiple deliveries each day that they worked for Defendants.

41. Defendants' unreasonable failure to provide any reimbursement diminished Plaintiff Byard's wages by up to $2,000.00 per month, bringing her net pay to approximately $300.00 for 180 hours of worked performed, and reduced some of the Opt-In Plaintiffs' hourly wages by even more, which far exceeds any amount paid by Defendants over the federal minimum wage to the Opt-In Plaintiffs or any of their delivery drivers.

42. Based on the allegations set forth above, Defendants' average under-reimbursement of automobile expenses over the prior three years have exceeded the difference between hourly wages paid in each state in which Defendants operates and the federal minimum wage during part or all of the limitations period, thereby resulting in company-wide minimum wage violations.

43. Defendants' failure to reimburse drivers were a frequent complaint of Defendants' delivery drivers, including Plaintiff Byard and most of the Opt-In Plaintiffs, yet Defendants did nothing to rectify the problem, and in fact conveyed that reimbursement rates would not be paid.

44.     The net effect of Defendants' failure to reimburse their drivers is that they willfully fail to pay the federal minimum wage to their delivery drivers.   Further, Defendants willfully fail to pay minimum wages required by state law in the time periods during which individual states' minimum wage laws require a minimum wage higher than the federal minimum wage.   Defendants thereby enjoy ill-gained profits at the expense of their employees.

45.     Defendants have not relied on any tip credit to satisfy federal or state minimum wage requirements.

## Collective and Class Action Allegations

46.     Plaintiff Byard brings Count I (the FLSA claim) as an "opt-in" collective action on behalf of similarly situated delivery drivers who were not reimbursed for their driving expenses within the past three years.

47.     The FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

48.     Plaintiff Byard, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging Defendants' practice of failing to pay employees federal minimum wage and overtime compensation.   The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential class members may be notified of the pendency of this action.

49. Plaintiff Byard, the Opt-In Plaintiffs, and all of Defendants' delivery drivers are similarly situated in that:

      a. They worked as delivery drivers for Defendants and delivered automotive parts to Defendants' customers.

      b. They delivered automotive parts using automobiles not owned or maintained by Defendants.

      c. Defendants required them to maintain these automobiles in a safe, legally-operable, and insured condition to use in delivering Defendants' automotive parts to customers.

      d. They incurred costs for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, and depreciation ("automobile expenses") while delivering automotive parts for the primary benefit of Defendants.

      e. They were subject to similar employment conditions, automobile expenses, delivery distances, and delivery frequencies.

      f. They were subject to the same pay policies and practices of Defendants, including Defendants' misclassification of them as independent contractors.

      g. They were subject to the same Delivery Driver Reimbursement Policy—which fails to reimburse drivers in any way for automobile expenses—

and thereby were systematically deprived of reasonably approximate reimbursements, resulting in their wages falling below the federal minimum wage in some or all workweeks.

h. They were paid a monthly wage that did not compensate them at one and one half times their regular rate of pay for each hour worked in excess of 40 hours in a workweek.

51. Plaintiff Byard brings Count II as a class action under Fed. R. Civ. P. 23, on behalf of herself and a Class defined as:

> All current and former delivery drivers employed by Defendants during the applicable statute of limitations, who used vehicles not owned or operated by Defendants for Defendants' business purposes and who were not eligible for reimbursement.

52. The state law claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

53. The state law claims in Count II satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action under Federal Rule of Civil Procedure 23.

54. The Class consists of hundreds of persons who are geographically dispersed. As a result, the Class is numerous and joinder of all class members in a single action is impracticable.

55. Questions of fact and law common to the Class predominate over any questions affecting only individual members. The questions of law and fact common to

the classes arising from Defendants' actions include, without limitation, whether Defendants misclassified their drivers as independent contractors, whether Defendants failed to approximate and pay automobile expenses for their delivery driver employees, whether Defendants failed to pay class members the minimum wage and/or overtime required by the applicable states' minimum wage laws, and whether Defendants' conduct was willful.

56.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

57.     Plaintiff Byard's claims are typical of those of the Class in that Plaintiff Byard and the Class members:

a.     Worked as delivery drivers and delivered Defendants' automotive parts to Defendants' customers.

b.     Delivered automotive parts using automobiles not owned or maintained by Defendants.

c.     Were required by Defendants to maintain these automobiles in a safe, legally-operable, and insured condition to use in delivering Defendants' automotive parts.

d. Incurred costs for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, and depreciation ("automobile expenses") while delivering automotive parts for the primary benefit of Defendants.

e. Were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies.

f. Were subject to the same pay policies and practices of Defendants.

g. Were subject to the same Delivery Driver Reimbursement Policy that systematically failed to reimburse their expenses, resulting in their wages falling below the federal minimum in some or all workweeks.

i. Were paid a monthly wage approximating $2,300, but yet received no overtime compensation when working over 40 hours in a workweek.

j. Experienced no reimbursement for automobile expenses that reduced their net wages below their respective state's minimum wage.

58. A class action is the appropriate method for the fair and efficient adjudication of the state law claims. Defendants have acted or refused to act on grounds generally applicable to the Class. The presentation of separate actions by individual Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of Class members to protect their interests.

59.     Plaintiff Byard is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interest of the Class members she seeks to represent.  The interests of the Class members will be fairly and adequately protected by Plaintiff Byard and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

60.     Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy.  It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

### Count I:  Violation of the Fair Labor Standards Act of 1938

61.     Plaintiff reasserts and re-alleges the allegations set forth above.

62.     At all relevant times herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

63.     The FLSA regulates, among other things, the payment of minimum wage and overtime compensation by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. §206(a); 29 U.S.C. § 207(a)(1).

64. Defendants are subject to the FLSA's minimum wage and overtime requirements because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

65. Pursuant to Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees are entitled to be compensated at a rate of at least $7.25 per hour effective July 24, 2009.

66. Pursuant to Section 7 of the FLSA, codified at 29 U.S.C. § 207, employees are entitled to be compensated at one and one half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

67. Defendants were not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA nor did they attempt to do so.

68. As alleged herein, Defendants uniformly fail to reimburse delivery drivers for their automobile expenses to such an extent that it diminishes these employees' wages beneath the FLSA's minimum wage provision.

69. Defendants uniformly fail to compensate their employees at one and one half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

70. Defendants knew or should have known that their failure to reimburse delivery drivers for their expenses fails to compensate delivery drivers at the federal minimum wage.

71.     Defendants knew or should have known that their failure to compensate their delivery drivers at a rate not less than one and one half times their regular rate of pay for hours worked in excess of 40 hours in a workweek violates Section 7 of the FLSA.

72.     Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage and overtime compensation to Plaintiff and other similarly situated employees.

73.     Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations.  None of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

74.     Plaintiff and all similarly situated employees are victims of a uniform and employer-based compensation policy.  This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendants' places of business.

75.     Plaintiff and all similarly situated employees are entitled to damages equal to one and one half times their regular rate of pay and the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether their conduct was unlawful.

76. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants did not act willfully in failing to pay minimum wage, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

77. As a result of the aforesaid willful violations of the FLSA's minimum wage and overtime provisions, minimum wage and overtime compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count I of this Complaint, Plaintiff and all similarly situated employees demand judgment against Defendants and pray for: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; (5) a declaration that Defendants' conduct violates the FLSA; (6) notice to be sent to the class of similarly situated workers; and (7) such other relief as the Court deems fair and equitable.

### Count II:  Violation of State Minimum Wage Laws

78.     Plaintiff reasserts and re-alleges the allegations set forth above.

79.     Plaintiff brings Count II on behalf a Class of all current and former delivery drivers employed by Defendants during the applicable limitations periods in the States of Missouri, Kansas, Colorado, Utah and Texas (the "States").

80.     Defendants' failure to pay their delivery drivers the federal minimum wage necessarily caused a corresponding violation of the States' minimum wage laws during the time periods in which these States required payment of a higher minimum wage than the federal minimum.  Count II is brought to recover these additional unpaid wages.

81.     At all relevant times herein, Plaintiff and members of the Class have been entitled to the rights, protections, and benefits provided under the States' laws, as applicable, and any wage orders and regulations incorporated therein.

82.     **Colorado:**  The aforementioned pay policy and practice by Defendants was and/or is in violation of the minimum wage provisions of the Colorado Minimum Wage of Workers Act, C.R.S.A. §§ 8-6-101, *et seq.*

83.     **Kansas:** The aforementioned pay policy and practice by Defendants was and/or is in violation of the minimum wage provisions of the Kansas Wage Payment Act, K.S.A. §§ 44-301, *et seq.*

84. **Missouri:**  The aforementioned pay policy and practice by Defendants was and/or is in violation of the minimum wage provisions of  Mo. Rev. Stat. §§ 290.500 *et seq*.

85. **Texas:** The aforementioned pay policy and practice by Defendants was and/or is in violation of the minimum wage provisions of Title 2, Chapter 62 of the Texas Labor Code.

86. **Utah:** The aforementioned pay policy and practice by Defendants was and/or is in violation of the minimum wage provisions of Utah Code Ann. § 34-40-205, *et. seq*.

87. The States' minimum wage laws regulate the payment of minimum wage by employers who employ any person in those States, subject to limited exemptions not applicable herein, and provide or have provided during part or all of the applicable limitations period for a higher minimum wage than that provided for under federal law.

88. During all times relevant to this action, Defendants were the "employers" of Plaintiff Byard and the members of the Class within the meaning of the States' minimum wage laws.

89. During all times relevant to this action, Plaintiff Byard and the Class were Defendants' "employees" within the meaning of the States' minimum wage laws.

90. Plaintiff Byard and the Class members are not exempt employees under any of the States' minimum wage laws.

91.    Defendants have not relied on any tip credit to satisfy any of the States' minimum wage laws.

92.    Defendants, pursuant to their policy and practice, violated the States' minimum wage and overtime laws by refusing and failing to pay Plaintiff Byard and other similarly situated employees minimum wage and overtime compensation.

93.    Defendants knew or should have known that their policy and practice failed to pay their delivery drivers a reasonable approximation of their automobile expenses, and that through this "kick back" of wages Defendants uniformly and systematically failed to pay the minimum wage required by each of the States' minimum wage laws. Additionally and alternatively, Defendants' knowledge and actions justify an award of liquidated damages and/or penalties as permitted under the individual States' minimum wage laws.

94.    Plaintiff Byard and the Class are victims of a uniform and employer-based reimbursement policy regarding automobile expenses. This uniform policy, in violation of federal minimum wage and overtime compensation laws and thus necessarily in violation of the States' minimum wage laws and overtime compensation, has been applied to all Class members in Defendants' locations throughout the States.

95.    Plaintiff Byard and all similarly situated employees are entitled to damages equal to the difference between the applicable State's minimum wage and actual wages

received after deduction for a reasonable approximation for automobile expenses within the applicable limitations period, plus periods of equitable tolling.

96.    Plaintiff Byard and the Class are entitled to an award of liquidated damages, pre-judgment and post-judgment interest at the applicable legal rate, and for any other remedy permitted under the applicable State law.

97.    Defendants are liable for Plaintiffs' attorneys' fees and costs incurred in this action as allowed under the applicable State law.

WHEREFORE, on Count II of this Complaint, Plaintiff Byard and the Class demand judgment against Defendants and pray for: (1) compensatory damages; (2) liquidated damages as provided by law; (3) pre-judgment and post-judgment interest as provided by law; (4) attorneys' fees and costs of litigation as provided by law; (5) a declaration that Defendants' conduct violates the FLSA; (6) notice to be sent to the class of similarly situated workers; and (7) such other relief as the Court deems fair and equitable.

Dated:        May 6, 2014

Respectfully submitted,


Respectfully submitted,

WILLIAMS DIRKS DAMERON LLC

_s/ Eric L. Dirks_
Eric L. Dirks        MO Bar No. 54921

1100 Main Street, Suite 2600
Kansas City, MO 64105
(o) 816-876-2600; (f) 816-221-8763
dirks@williamsdirks.com
mwilliams@williamsdirks.com

THE HODGSON LAW FIRM, L.L.C.
 *s/ Michael Hodgson*
Michael Hodgson       Mo. Bar No. 63677
6 NW Main St.
Lee's Summit, MO 64063
Tel: (913) 890-3529
mike@thehodgsonlawfirm.com


EDELMAN, LIESEN & MYERS, L.L.P.
*s/ Katherine E. Myers*
Katherine E. Myers  Mo. Bar No. 64896
4051 Broadway, Suite 4
Kansas City, MO 64111
Tel: (816) 533-4976 Fax: (816) 463-8449
kmyers@elmlawkc.com

**ATTORNEYS FOR PLAINTIFF AND THE CLASS**